UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| BRIAN P. SARTIN, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ]   6:09-CV-2293-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

Plaintiff, Brian P. Sartin, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income ("SSI"). Mr. Sartin timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Sartin was thirty years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has an eleventh grade education. (Tr. at

26-27.)  His past work experience includes employment as an industrial cleaner, trim painter, sander, mattress packager, stacker, and saw operator. *Id*. at 26, 82, 92-99.  Sartin claims that he became disabled on June 2, 2006, due to burns on his body, blindness in the left eye, headaches, degenerative joint disease, borderline intellectual functioning, and depression. *Id*. at 27-28.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278, 1280 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops. *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340,

1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §

416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Sartin had not engaged in substantial gainful activity since the alleged onset of his disability.  (Tr. at 10.)  According to the ALJ, Plaintiff's status post burns to the left shoulder, arm, and back; blindness in the left eye, migraine headaches; degenerative joint disease; atrophy of left forearm; borderline intellectual functioning; and depressive disorder are considered "severe" based on the requirements set forth in the regulations.  *Id.*  However, the ALJ found that these impairments neither met nor medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 12.  The ALJ did not find Mr. Sartin's allegations to be totally credible.  The ALJ then determined that Mr. Sartin has the residual functional capacity to

> perform light work as defined in 20 CFR 416.967(b).  He must be able to change positions at will.  He is restricted from driving, operating moving machinery, working in open heights and climbing ladders.  He also cannot perform activities that require pushing and pulling or anything that requires binary vision.  The claimant has the mental ability to understand and remember simple instructions and concentrate and persist on simple tasks during a normal

> workday. He can demonstrate the capacity to interact in moderate contact situations involving the general public. He can adapt to simple work environments and his ability to interact with co-workers and/or supervisors is only moderately impaired. He can follow simple tasks and instructions.

*Id.* at 13.

The ALJ then determined that "claimant is unable to perform any past relevant work." (Tr. at 15.) Also, according to the ALJ, Mr. Sartin is a "younger individual," and has a "limited education" as defined by the regulations. *Id.* He determined that the "[t]ransferability of job skills is not an issue in this case because the [Plaintiff]'s past relevant work is unskilled." *Id.* at 16. The ALJ found that Mr. Sartin has the residual functional capacity to perform light work with limitations. *Id.* Even though Plaintiff cannot perform the full range of light work, the ALJ used Medical-Vocation Rule 202.17 and the testimony of a Vocational Expert ("VE") to find that there are a significant number of jobs in the national economy that the Plaintiff is capable of performing, such as ticket marker and packager. *Id.* The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since May 17, 2007,

the date the application was filed." *Id*.

II.  Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id*. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if

this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Mr. Sartin alleges that the ALJ's decision should be reversed and remanded for two reasons. (Doc. 8.) First, Plaintiff claims that the ALJ failed to afford proper weight to the medical opinion of his treating physician, Dr. Long. *Id*. at 9. Second, Plaintiff contends the ALJ's hypothetical question to the VE did not contain the words "change positions at will" as found in his RFC finding. *Id*. at 11.

A. Proper Weight Was Given To Physician Testimony.

Plaintiff asserts that the ALJ erred because he did not afford proper

weight to the opinion of the treating physician, Dr. Long. (Doc. 8 at 9.) In determining disability, a treating physician's opinion is to be given "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal quotations omitted)). The weight to be afforded a medical opinion concerning the nature and severity of a claimant's impairments depends upon several factors: the examining and treating relationship between the medical source and the claimant, the supporting evidence presented by the medical source, the consistency of the opinion with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). If a physician's opinion is not supported by the evidence, or if the opinion is not consistent with the doctor's own records, there is cause to discount the opinion. *Crawford*, 363 F.3d at 1159; *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

The ALJ stated in his decision that he gave "little weight" to the opinion of Plaintiff's treating physician. (Tr. at 15.) This Court agrees with that weighting. Dr. Long's opinion is inconsistent and unsupported by the

record as a whole.

Dr. Long treated Plaintiff for complaints of back pain, knee pain, headaches, and muscle spasms over the course of six years, dating June 2003-March 2009. (Tr. at 138-41, 193-95, 198-99.) In June 2003, Dr. Long received Plaintiff's first complaint of back pain. *Id.* at 141. It was not until more than five years later, during an August 2008 visit to Dr. Long, that Plaintiff further complained of this back pain. *Id.* at 198. Dr. Long then ordered an x-ray of Plaintiff's lower back. *Id.* The x-ray revealed no abnormalities and the radiologist characterized the results as a "normal study." *Id.*

Also, Plaintiff saw Dr. Long in July 2006 for pain in his right knee. (Tr. at 140.) However, it was not until further complaints in 2008 that Dr. Long ordered an x-ray of the knee. *Id.* at 194. The x-ray revealed no abnormalities. *Id.* at 195. Moreover, at no time during the six years did Dr. Long give an opinion regarding Plaintiff's functional limitations. *Id.* at 138-41, 193-95, 198-99. Despite all this, on April 17, 2009, Dr. Long completed a Clinical Assessment of Pain in which he determined that Plaintiff's "pain was present to such an extent to be distracting to adequate performance of

daily activities or work." *Id.* at 11. At that time, Dr. Long further determined that "[p]hysical activity such as walking, standing, bending, stooping and moving extremities greatly increased pain and to such a degree as to cause distraction from tasks or total abandonment of tasks." *Id.* But the rest of the record fails to support these determinations.

Dr. Long's determinations rely on three areas of Plaintiff's pain: skin burns, headaches, and back impairment. Plaintiff claims that he is disabled due to these skin burns, headaches, and back impairment. (Tr. at 14; Doc. 8 at 9.) Regarding the skin burns, consultative physician, Dr. Vakharia, determined that although Plaintiff's burns did somewhat limit his movement in the left shoulder and elbow, Plaintiff's gait was normal, and his grip was only slightly diminished compared to the right side. (Tr. at 14.) Also, Plaintiff admitted to Dr. Vakharia that he had not been to the doctor for the condition and was not taking any prescribed medication for it, suggesting that his pain was not as severe as alleged. *Id.*

Second, Plaintiff claims his headache pains cause disability. (Tr. at 14.) Although Plaintiff has been diagnosed with tension and migraine headaches, the record does not show that he has ever sought or received

treatment for the condition. *Id.* Also, the record does not show any evidence of a disabling condition that causes the headaches. *Id*. Additionally, the record shows that Plaintiff simply took over-the-counter medications for his migraine headache pain instead of narcotic based pain medications. *Id*. All of this suggests that Plaintiff's pain may not have been as severe as alleged.

Third, Plaintiff claims disability caused by back pain. (Tr. at 15.) No objective evidence in the record corroborates this claim. *Id*. X-rays revealed no spinal abnormalities and Plaintiff's gait was normal. *Id*. Also, the record indicates that Plaintiff was able to perform activities that require prolonged sitting (i.e. playing video games, using the computer, making crafts). *Id*. Furthermore, Plaintiff admitted that he engaged in activities of daily living with no assistance (i.e. driving, shopping, making the bed, washing dishes). *Id*. These facts do not indicate he was suffering from disabling back pain. Finally, Plaintiff was not taking any prescription medication for his back pain. *Id*. All this suggests minimal pain.

Dr. Long's opinion that Plaintiff's "pain was present to such an extent to be distracting to adequate performance of daily activities or work" is

inconsistent with other medical evidence of the record and it is unsupported by the record as a whole. Therefore, the ALJ was within his discretion to discount the opinion of Dr. Long.

B.    Proper Hypothetical Posed To VE.

Plaintiff further contends that the ALJ erred because he posed an improper hypothetical to the VE. (Doc. 8 at 11.) Plaintiff argues that the ALJ was in error when he said, "[L]et's take a look at the light level with the change position option, . . . . Within that framework, what [jobs] do we have?" (*Id*. at 11, Tr. at 36.) Specifically, Plaintiff highlights that in presenting the hypothetical to the VE, the ALJ used the language, "with the change position option," instead of, "change positions at will." *Id*. at 11. Plaintiff argues that because of this difference in language the hypothetical was improper and the case should be remanded. *Id*. This Court is not persuaded by Plaintiff's argument.

The Eleventh Circuit addressed a similar issue in *Williams v. Barnhart*, 140 Fed. Appx. 932 (11th Cir. 2005). In *Williams*, the ALJ asked the VE whether "the job would have what's typically called a sit/stand option." *Id*. at 937. Though the ALJ did not specify how frequently the plaintiff

would need to change his sit/stand position, the court stated that the reasonable implication of the ALJ's hypothetical was that the sit/stand option would be at the plaintiff's own volition. *Id.* at 937.

In the case *sub judice*, the reasonable implication of the ALJ's hypothetical was that the change position option would be at Plaintiff's own volition. Just before questioning the VE, the ALJ asked Plaintiff if he could do a job where he could sit/stand at will. (Tr. at 36). The VE was present during this question and did not ask the ALJ for clarification when the hypothetical was posed. *Id.* Therefore, it is apparent that the VE was aware that the ALJ was referring to a change position at will option. Also, Plaintiff has offered no other reasonable interpretation of the hypothetical. Therefore, the ALJ did not pose an improper hypothetical to the VE.

IV. Conclusion.

An ALJ's decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court finds that the ALJ afforded appropriate weight to the opinion of Plaintiff's treating physician and that the ALJ did not pose an improper hypothetical to the VE.

Because the Court finds that the Commissioner's final decision applies the proper legal standards and is supported by substantial evidence, the decision of the Commissioner will be affirmed by separate order.

Done this 14th day of March 2011.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671